[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 14-11202 & 14-11204
_____

D.C. Docket No. 3:11-cv-00123-TCB


GEORGIA STATE CONFERENCE OF THE NAACP, et al.,

Plaintiffs - Appellees,

versus

FAYETTE COUNTY BOARD OF COMMISSIONERS, et al.,

Defendants - Appellants,

FAYETTE COUNTY BOARD OF EDUCATION, et al.,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(January 7, 2015)

Before WILSON and ROSENBAUM, Circuit Judges, and CONWAY,[*] District Judge.

WILSON, Circuit Judge:

At the time this suit commenced, no African-American candidate had ever been elected to either the Fayette County Board of Commissioners (BOC) or the Fayette County Board of Education (BOE) in Fayette County, Georgia. The Georgia State Conference of the NAACP, the Fayette County Branch of the NAACP, and ten individual African-American registered voters residing in Fayette County (collectively, Appellees) averred that Fayette County's at-large election system violated Section Two (§ 2) of the Voting Rights Act (VRA)[1] by effectively guaranteeing that no African-American would be able to participate in the political process through election to the BOC or the BOE, nor would African-American voters be able to elect representatives of their choice to either entity.[2] Appellees contended that a districting plan including a single majority-minority district would

---

[*] Honorable Anne C. Conway, Chief United States District Judge for the Middle District of Florida, sitting by designation.

[1] Voting Rights Act of 1965, § 2, 52 U.S.C. §10301 (formerly cited as 42 U.S.C. § 1973).

[2] Defendants-Appellants include the BOC and its members in their official capacities; the Fayette County Board of Elections and Voter Registration and its department head; and the BOE and its members in their official capacities (collectively, Appellants). The BOC and the BOE appealed the district court's judgment separately (in Case Nos. 14-11202 and 14-11204, respectively), but their appeals originated from the same case in the district court. After reviewing the parties' briefs and hearing oral argument from all sides, we address both appeals together in this opinion.

2

provide African-Americans the opportunity for meaningful political participation and the ability to elect candidates of their choice to both boards.

After considering cross-motions for summary judgment from Appellees and the BOC, the court below entered summary judgment in Appellees' favor, finding the at-large election method used by both the BOC and BOE resulted in impermissible vote dilution.[3]  In so doing, the district court failed to notice the BOE that it was considering awarding summary judgment against it; additionally, the court weighed the evidence submitted by the moving parties, accepting the support proffered by Appellees and rejecting the contrary evidence presented by the BOC.  Thus, without opining as to the correctness of the court's substantive conclusions, we find that the district erred in rendering its § 2 determination on summary judgment.  We therefore vacate and remand the district court's entry of summary judgment against the BOC and the BOE for further proceedings in accordance with this opinion.[4]

---

[3] "Vote dilution" refers to the effect of election methods that dilute the voting strength of racial minority voters in the larger voting population; this constitutes a violation when plaintiffs prove that the "electoral structure operates to minimize or cancel out [minority voters'] ability to elect their preferred candidates." *See Thornburg v. Gingles*, 478 U.S. 30, 47–48, 106 S. Ct. 2752, 2764–65 (1986) (noting that at-large voting schemes—while not per se violative of minority voters' rights—have long been recognized by the Supreme Court as having the potential to dilute minority votes).  "The theoretical basis for this type of impairment is that where minority and majority voters consistently prefer different candidates, the majority, by virtue of its numerical superiority, will regularly defeat the choices of minority voters." *Id.* at 48, 106 S. Ct. at 2765.

[4] To the extent Appellants contest the district court's denial of summary judgment against Appellees, we **AFFIRM** the district court's denial of the BOC's motion for summary judgment,

3

## I. PROCEDURAL BACKGROUND

Located in Northwest Georgia, Fayette County has a population of 106,567 and a voting-age population of 78,468, out of which 57,766 (73.6%) voters identify as white, and 15,247 (19.5%) identify as African-American, according to the 2010 decennial census relied on by the parties. The African-American population is largely concentrated in the northern half of Fayette County. The BOC and the BOE are governing bodies in Fayette County; both boards are comprised of five elected members who each serve staggered, four-year terms. At the time of suit, both the BOC and the BOE used an at-large election system to fill seats. Candidates running for one of the seats had to reside in a geographic district corresponding to a seat number, but to be elected to a seat, the candidate had to win a general election in the county. Consequently, to represent the district in which he or she resided, a candidate had to receive a majority of the votes from the county as a whole.

Despite being the preferred candidates of African-American voters in countywide elections, no African-American candidates had ever been elected to the

---

as the BOC neither produced "affirmative evidence demonstrating that [the Appellees] will be unable to prove [their] case at trial," nor showed that "there [was] an absence of evidence" supporting Appellees' case. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991). To the contrary, although we remand because, among other reasons, the district court should not have weighed the evidence on summary judgment, the district court made abundantly clear in its comprehensive opinion that the substantial weight of that evidence favored Appellees.

BOC or the BOE, regardless of the candidates' respective qualifications or party affiliation.[5] Voters' candidate preferences in general elections were racially polarized, with African-American voters preferring African-American candidates and non-African-American voters preferring white candidates. After unsuccessfully advocating for district voting, Appellees filed suit against the BOE and its members, the BOC and its members, and the Fayette County Board of Elections and Voter Registration and its department head. Appellees' sole claim was that Fayette County's at-large method of electing members to the BOC and the BOE constituted vote dilution in violation of § 2 of the VRA.

The Appellees and the BOE immediately began settlement negotiations. On February 20, 2012, Appellees and the BOE filed a motion for approval of a proposed consent decree, requesting that the district court adopt the BOE redistricting plan contained therein (the BOE plan). However, the BOC opposed the consent decree and argued that (1) the remedy to which the BOE and Appellees agreed was not authorized by law, and (2) the district court did not have authority to impose a redistricting plan absent the finding of a § 2 violation. Consequently, the district court ordered the parties to brief the issues and scheduled a hearing on

---

[5] By way of example, in one BOC election, three Republican candidates ran for a vacant seat on the BOC, including two African-American candidates—one of whom was vice-chairman of the County Republican Party—and one white candidate, who was a newly registered voter. The non-minority candidate defeated all African-American candidates without a runoff in the at-large election.

the matter.  Prior to the hearing, on May 2, 2012, Appellees and the BOE submitted an amended proposed consent decree, in which the BOE admitted that the at-large election method of electing members violated § 2 of the VRA.

After hearing arguments from all parties, the district court rejected the amended proposed consent decree, as the BOE plan did not include the majority-minority district required to remedy impermissible vote dilution (instead, the BOE plan created a district with an African-American voting-age population of only 46.2%).  Following the court's denial of the motion to approve the amended consent decree, Appellees and the BOC proceeded to discovery, with both sides taking multiple depositions.  The BOE, although receiving notice of discovery proceedings, did not attend depositions or otherwise participate in discovery.  Meanwhile, Appellees filed a 28 U.S.C. § 1292(b) motion to certify an interlocutory appeal with regard to the court's decision denying the BOE and Appellees' motion to approve the consent decree.

At the close of discovery, the BOC and Appellees cross-moved for summary judgment (on September 13 and 14, 2012, respectively).  By its own terms, Appellees' summary-judgment motion was directed solely against the BOC, as Appellees' § 1292(b) motion regarding the district court's denial of the proposed consent order filed by Appellees and the BOE was still pending.  Subsequently, on September 18, 2012, the district court entered an order denying Appellees' §

6

1292(b) motion. On the same day, in a separate order, the court denied a joint request for a discovery extension previously filed by Appellees and the BOE. Although all previously pending motions related to the BOE were now resolved, Appellees did not amend their summary judgment motion to include the BOE.

On May 21, 2013, the district court entered an eighty-one-page opinion denying the BOC summary judgment and granting Appellees summary judgment against both the BOC and the BOE. In the opinion, the district court, applying the framework set forth in *Thornburg v. Gingles*, determined the at-large voting system for the BOC and BOE elections violated § 2 of the VRA. The district court noted that "[t]he [BOE], having conceded the existence of a [§] 2 violation, did not participate in discovery or the current [summary judgment] motions"; however, based on the court's determination and the BOE's "admission of liability," the court entered summary judgment against the BOE as well, ordering all parties to submit proposed remedial plans for the BOC and BOE elections.

Immediately thereafter, the BOC moved to certify an interlocutory appeal of four issues related to the district court's entry of summary judgment and to stay the case pending appeal. The district court denied leave, finding that there was no "controlling question of law as to which there [wa]s substantial ground for difference of opinion." *See* 28 U.S.C. § 1292(b).

After receiving the parties' proposed remedial plans as ordered in its summary judgment opinion, the district court engaged an independent technical expert advisor to develop an appropriate remedy for the § 2 violation. On January 24, 2014, the parties received the district court's proposed remedial plan developed in consultation with the expert advisor (the court-drawn remedial plan) in an order setting a hearing and requesting written responses in opposition to the plan. After a hearing, the district court entered an order: (1) enjoining elections under at-large voting, and (2) adopting the court-drawn remedial plan for both the BOC and the BOE. The district court then entered final judgment and ordered the BOC and the BOE to promptly implement the court-drawn remedial plan.

This appeal ensued, in which the BOC and the BOE appeal the district court's entry of summary judgment; specifically, the district court's finding of a § 2 violation. The BOE also appeals the entry of summary judgment against it in particular, as a non-moving, non-noticed party, and the district court's imposition of the court-drawn remedial plan.

## II. LEGAL FRAMEWORK

### A. *Nature of Claims brought under § 2 of the Voting Rights Act*

Appellees initiated their suit under § 2 of the VRA. The VRA was put in place "to help effectuate the Fifteenth Amendment's guarantee that no citizen's right to vote shall 'be denied or abridged . . . on account of race, color, or previous

8

condition of servitude." *Voinovich v. Quilter*, 507 U.S. 146, 152, 113 S. Ct. 1149, 1154–55 (1993) (alteration in original) (quoting U.S. Const. amend. XV, § 1). Specifically, § 2 of the VRA "prohibits any State or political subdivision from imposing any electoral practice which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." *Perry v. Perez*, 565 U.S. ___, 132 S. Ct. 934, 940 n.1 (2012) (per curiam) (internal quotation marks omitted). Thus, a § 2 violation is established:

> [I]f, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of [a racial minority group] . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

*Gingles*, 478 U.S. at 36, 106 S. Ct. at 2759 (internal quotation marks omitted). Under the framework set forth by the Supreme Court in *Gingles*, the seminal § 2 case, plaintiffs must satisfy three threshold requirements to proceed with a vote dilution claim: (1) the minority group is "sufficiently large and geographically compact to constitute a majority in a single-member [voting] district"; (2) the minority group is "politically cohesive," and (3) that the "majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *See id.* at 49–51, 106 S. Ct. at 2766–67.

9

The three *Gingles* requirements are necessary preconditions, intended "to help courts determine which claims could meet the totality-of-the-circumstances standard for a § 2 violation." *Bartlett v. Strickland*, 556 U.S. 1, 21, 129 S. Ct. 1231, 1247 (2009). Plaintiffs must prove that the electoral scheme results in a discriminatory effect. Thus, to establish liability, § 2 plaintiffs must still demonstrate—after satisfying the three *Gingles* preconditions—that the totality of the circumstances results in an unequal opportunity for minority voters to participate in the political process and to elect representatives of their choosing as compared to other members of the electorate. *See Abrams v. Johnson*, 521 U.S. 74, 91, 117 S. Ct. 1925, 1936 (1997). Courts use factors drawn from a report of the Senate Judiciary Committee accompanying the 1982 amendments to the VRA (the Senate factors) to make the totality-of-the-circumstances determination. *See Gingles*, 478 U.S. at 43–46, 106 S. Ct. 2762–64. The courts are not limited to considering solely these factors, and the factors are "neither comprehensive nor exclusive." *Id.* at 45, 106 S. Ct. at 2763. Nor is there a requirement that "any particular number of factors be proved, or that a majority of them point one way or the other." *Id.* (internal quotation marks omitted).

Although the Supreme Court has made clear that the district courts must perform this totality-of-the-circumstances analysis, "it will be only the very unusual case in which the plaintiffs can establish the existence of the three *Gingles*

10

factors but still have failed to establish a violation of § 2 under the totality of circumstances." *Jenkins v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 4 F.3d 1103, 1135 (3d Cir. 1993); *accord NAACP v. City of Niagara Falls*, 65 F.3d 1002, 1019 n.21 (2d Cir. 1995).  Rather, the essential inquiry in a § 2 case is "whether the political process is equally open to minority voters."  *Gingles*, 478 U.S. at 79, 106 S. Ct. at 2781.  A discriminatory *result* is all that is required; discriminatory intent is not necessary.  *See Voinovich*, 507 U.S. at 155, 113 S. Ct. at 1156.

## B.  Summary Judgment Standard

Normally, claims brought under § 2 of the VRA are resolved pursuant to a bench trial, with judgment issued under Federal Rule of Civil Procedure 52.  We have found it particularly "important in voting dilution cases that the district court scrupulously comply with the requirements of [Rule 52(a)] and make findings of fact and conclusions of law in sufficient detail that the court of appeals can fully understand the factual and legal basis for the court's ultimate conclusion." *McIntosh Cnty. Branch of the NAACP v. City of Darien*, 605 F.2d 753, 757 (5th Cir. 1979).[6]  This is because "[s]ifting through the conflicting evidence and legal arguments and applying the correct legal standards is for the district court in the first instance."  *Id.* at 759.  Thus, "[a]s the Supreme Court and this Court have

---

[6] The Eleventh Circuit, sitting en banc, adopted as binding precedent all decisions rendered by the Fifth Circuit prior to close of business on September 30, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

established, we review the district court's findings on a Section 2 vote dilution claim for clear error." *Johnson v. Hamrick*, 296 F.3d 1065, 1074 (11th Cir. 2002) (noting that "[d]eference is afforded the district court's findings due to its special vantage point and ability to conduct an intensely local appraisal of the design and impact of a voting system").

Here, however, the district court resolved Appellees' § 2 claim on summary judgment, pursuant to Federal Rule of Civil Procedure 56. A basic requirement for summary judgment is that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a summary judgment motion, the court must construe the facts and draw all rational inferences therefrom in the manner most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007). In so doing, "the district court may not weigh the evidence or find facts." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986)). Nor may the court "make credibility determinations of its own." *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011). Rather, the court is "limited to deciding whether there is sufficient evidence upon which a [fact-finder] could find for the non-moving party." *Morrison*, 323 F.3d at 924.

Our standard of review is somewhat clouded by the timing of the district court's § 2 determination (that is, on motions for summary judgment).  In the context of cases under § 2, "the clearly-erroneous test of Rule 52(a) is the appropriate standard for appellate review of a finding of vote dilution."  *See Gingles,* 478 U.S. at 79, 106 S. Ct. at 2781.  However, "[g]enerally, in summary judgment we review the district court's legal conclusions de novo."  *Meek v. Metro. Dade Cnty.*, 908 F.2d 1540, 1544 (11th Cir. 1990); *see Johnson v. Governor of Fl.*, 405 F.3d 1214, 1217 (11th Cir. 2005) (en banc).  "Nevertheless, we may correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law."  *Meek*, 908 F.2d at 1544 (internal quotation marks omitted).

Here, having independently reviewed the record, including the parties' pleadings before the district court, and having considered the parties' briefs on appeal in addition to oral argument by all parties, we cannot say that the district court misconstrued our precedent or reached its conclusions based on a misunderstanding of the applicable law.  Be that as it may, our singular concern—and thus our sole holding at this time—is that, in reaching those conclusions, the district court did so (1) without notice to one party, and (2) by weighing the evidence and making credibility determinations as to the other, both of which are

13

inappropriate on summary judgment.  Consequently, for reasons set forth in more detail below, we remand.

### III. DISCUSSION

On appeal, Appellants raise several issues, including that the district court's entry of summary judgment was procedurally deficient, as, "at the very least[,] the issues merited a trial with real findings."  Of all the arguments raised by Appellants, this is the one argument on which we rest our limited remand.  We conclude that the district court's entry of summary judgment against the BOE and the BOC was improper, and we address the reasons for each separately.

### A.  *Entry of Summary Judgment against the BOE*

We turn first to the district court's grant of summary judgment against the BOE.  It is undisputed that Appellees did not move for summary judgment against the BOE; indeed, Appellees expressly excluded the BOE from their summary judgment motion against the BOC and did not amend their motion or file anew when the pending issues related to the BOE were resolved by the court.  Although a district court has the authority under Rule 56(f) to grant summary judgment (1) in favor of a nonmoving party; (2) on grounds not raised by a party in its summary judgment motion, or (3) sua sponte after "identifying for the parties material facts that may not be genuinely in dispute,"  the district court must first provide the parties with "notice and a reasonable time to respond."  *See* Fed. R. Civ. P. 56(f);

14

*Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997).  The notice requirement "is not an unimportant technicality, but a vital procedural safeguard" subject to strict enforcement.  *See Massey*, 116 F.3d at 1417.

Here, the district court committed reversible error when it did not provide sufficient notice to the BOE prior to its sua sponte entry of summary judgment against the BOE.  The BOE received *no* notice that summary judgment might be entered against it and thus had no opportunity "to formulate and prepare [its] best opposition to an impending assault upon the continued viability of [its] . . . defense."  *See id.*

Although Appellees aver that the district court properly considered the BOE's "admission of liability" in granting summary judgment against the BOE, this argument fails.  First, the BOE only admitted § 2 liability for the limited purpose of settlement in an attempt to gain the district court's approval of the redistricting plan negotiated between Appellees and the BOE.  Second, the BOE's one-line "admission" does not overcome the "strictly enforced" notice requirement of Rule 56.  *See id.*  Thus, reversal is warranted for the BOE to "marshal [its] strongest evidence and legal arguments in opposition to summary judgment."  *See id.* at 1417–18.

## B.  *Entry of Summary Judgment against the BOC*

Next, we consider the district court's entry of summary judgment against the BOC.[7]  The BOC conceded that two of the *Gingles* preconditions were met; that is, minority cohesion and majority bloc voting.  However, the BOC disputed before the district court and both Appellants dispute on appeal whether Appellees (1) established the first *Gingles* precondition (that is, numerousness and geographical compactness), and (2) whether the totality of the circumstances weighed in Appellees' favor.

We approach this case with caution, bearing in mind that these circumstances involve "one of the most fundamental rights of our citizens: the right to vote." *Bartlett*, 556 U.S. at 10, 129 S. Ct. at 1240.  As noted above, it is unusual to find summary judgment awarded to the plaintiffs in a vote dilution case; however, there have been cases before this Court and the Supreme Court where summary judgment was granted to the *defendants*.[8]  Here, the BOC had full notice

---

[7] Arguments regarding whether the district court properly entered summary judgment against the BOC are found in both the BOC's and the BOE's briefs on appeal (and accordingly, in each of Appellees' response briefs).  Thus, although the BOC was the only defendant-appellant arguing against summary judgment before the district court, here, we refer to the arguments of the Appellants collectively.

[8] The affirmance of these grants on alternate grounds frequently resulted in dissents by members of this Court, who urged that the parties should have a full opportunity to be heard and premature resolution of the merits should be avoided, particularly given the nature of the fundamental right at issue. *See Nipper v. Smith*, 39 F.3d 1494, 1556–57 (11th Cir. 1994) (en banc) (Hatchett, J., dissenting) (noting that the policy of this Court where the trial court fails to make sufficient findings on a material issue is to vacate the judgment and remand the action for appropriate findings to be made); *see also Johnson*, 405 F.3d at 1242 (Wilson, J., concurring in

16

and opportunity to make its arguments against summary judgment given that the district court had before it cross-motions on summary judgment from Appellees and the BOC.  We find, however, that disposition of Appellees' § 2 claim by summary judgment was inappropriate because such a judgment required the district court to weigh the evidence and make credibility determinations.

When a district court renders summary judgment, "the only required finding is that there is no genuine issue as to any material fact.  If any fact issues exist a trial judge must not make findings but is required to deny the motion and proceed to trial." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted).  In practice, "[c]ross motions for summary judgment may be probative of the nonexistence of a factual dispute," *see id.*, but this procedural posture "do[es] not automatically empower the court to dispense with the determination whether questions of material fact exist," *see Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).  If "both parties proceed on the same legal theory and rely on the same material facts . . . the case is ripe for summary judgment." *Shook*, 713 F.2d at 665.

However, here, the parties responded to each respective summary judgment motion with disputes as to the "undisputed" facts, added "material facts" of their

---

part and dissenting in part) (dissenting on the basis that the "district court's resolution of the merits was premature and that the plaintiffs were entitled to present their case at trial").

17

own, and then replied with subsequent objections to the other party's additional facts. The parties also disputed which facts were legally relevant to the success or failure of Appellees' claim. Consequently, the record indicates that "the parties disagree[d] as to the facts and t[ook] inconsistent legal theories," and thus "the mere filing of cross motions for summary judgment d[id] not warrant the entry of [summary] judgment." *See id*.

There are also limited circumstances wherein the district court may treat cross-motions for summary judgment as a trial and resolve the case on the merits. *See Voigt*, 700 F.2d at 349. However, none of those circumstances were present in this case. The district court did not hold a hearing on the motions for summary judgment in which the facts were fully developed. S*ee Tripp v. May,* 189 F.2d 198, 200 (7th Cir. 1951) ("In a nonjury case if both parties move for summary judgment and the court finds that there are issues of fact but that the facts have been fully developed at the hearing on the motions, the court may proceed to decide the factual issues and give judgment on the merits. This of course amounts to a trial of the case and is not technically a disposition by a summary judgment." (internal quotation marks omitted)). Nor had the parties *expressly* stipulated to an agreed set of facts, and, as noted above, the record does not support that the parties had "*in effect* submitted th[e] case to the court for trial on an agreed statement of facts embodied in a limited written record," which would have enabled the court to

18

decide all issues and resolve factual disputes. *See Starsky v. Williams*, 512 F.2d 109, 111 (9th Cir. 1975) (emphasis added). Thus, with the parties apparently engaged in a factual dispute and in the absence of countervailing circumstances, it was improper for the district court to resolve the case on the merits at summary judgment.

Nevertheless, in support of their argument that summary judgment was proper, Appellees argue that Appellees and the BOC engaged in many rounds of briefing on these issues and additionally, the developed evidentiary record rendered summary judgment appropriate. *See Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 (11th Cir. 1995) (finding on appeal that summary judgment was appropriate because the appellate court's "independent review of the proffered supplemental materials disclose[d] no genuine issues which would prevent summary judgment" and the appellant did not "assert on appeal that there exist[ed] additional evidence, beyond the record and the proffered supplemental material, which would create material issues of fact"). Appellees note that discovery was completed, with expert depositions and affidavits on summary judgment motions submitted, and point to one other vote dilution case, *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2014 WL 4199364 (E.D. Wa., Aug. 22, 2014), where a district court granted summary judgment to the plaintiffs.

19

In *Montes*, the district court explicitly rejected the defendants' argument that the record was "not sufficiently developed to resolve the issue of liability on summary judgment," noting that the fact-specific nature of the requisite inquiries under *Gingles* did not relieve the defendants "of their obligation to come forward with specific facts showing that there [was] a genuine issue for trial." *Id.* at *23 (citation and internal quotation marks omitted). Since the defendants in that case could not "avoid summary judgment by vaguely asserting that they ha[d] additional unspecified evidence to present at trial," the district court made an express finding that "the record [was] sufficiently developed and not materially disputed" before granting plaintiffs' summary judgment motion. *Id.*

However, the district court here did not make a comparable finding nor did the record clearly afford such a finding. Although the district court recited the appropriate standards for summary judgment in its summary judgment order, the district court did not plainly state that no genuine issues of material fact were present, nor did the court explain why it rejected the BOC's proffer of disputed material facts in the BOC's summary judgment response.

We are also concerned that the district court impermissibly weighed the evidence before it. Appellants argue that the district court rejected explanatory evidence presented by Appellants as to why no African-American candidate had been elected. Appellants also aver that, in weighing the Senate factors to

determine the totality of the circumstances, the district court "ignored the unique demographic history of Fayette County" and disregarded "the fact that there is no evidence that past discrimination has any impact on the political participation of African-Americans in Fayette County." To the extent that Appellants use these arguments to contest the district court's legal conclusion, their argument is misplaced. The district court correctly held that the Senate factors are not an exhaustive list, and Appellees were not required to prove a majority of those factors or even any particular number of them. *See Gingles*, 478 U.S. at 45, 106 S. Ct. at 2763. However, to the extent Appellants argue that this balancing appears to involve a weighing of the evidence—that is, accepting Appellees' evidence of "practices that enhance discrimination" as persuasive and rejecting Appellants' evidence as unpersuasive—that argument has some merit due to the procedural posture of this case. Thus, although the court's *conclusion* may be sustainable, the method of arriving there (weighing the evidence presented by both sides) was inappropriate on summary judgment and further does not reflect any inferences drawn in Appellants' favor.[9] *See Burton v. City of Belle Glade*, 178 F.3d 1175,

---

[9] Under the circumstances, we can understand the district court's temptation to resolve the case on summary judgment. As the district court recognized, two important Senate factors applicable in this vote dilution case are (1) the "extent to which minority group members have been elected to public office in the jurisdiction" and (2) the "extent to which voting in the elections of the state or political subdivision is racially polarized." *See Gingles*, 478 U.S. at 48 n.15, 106 S. Ct. 2765 n.15 (internal quotation marks omitted). Here, with no African-American ever elected to the BOE or the BOC and racially polarized voting in elections for both boards, both of these important, undisputed factors pointed commandingly in Appellees' favor.

21

1187 (11th Cir. 1999) ("Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." (quoting *Clemons v. Dougherty Cnty., Ga.*, 684 F.2d 1365, 1369 (11th Cir. 1982))).

Further, one of the problems we are presented with is not so much a "fact-finding" problem as it is a credibility determination problem; the record below wants for credibility findings. For instance, the case turns on whether Appellees met the first *Gingles* precondition (that the African-American community in Fayette County is sufficiently large and geographically compact) and showed that the challenged electoral system resulted in a discriminatory effect under the totality of the circumstances. The BOC's expert said neither were met; Appellees' expert said they both were. Thus, the court clearly rejected the deposition testimony of the BOC's expert and accepted the deposition testimony of the Appellees' expert.

On appeal, Appellees present persuasive arguments as to *why* the BOC's evidence in the form of expert deposition testimony was rejected by the district court, but we will not affirm based on conjecture about why the evidence was

Furthermore, elections were looming in the immediate future, and, based on these undisputed Senate factors, the district court may well have been concerned that African-Americans in Fayette County would be effectively disenfranchised. Nevertheless, some material issues of fact remained disputed at the time that the district court ruled, meaning that, by definition, these disputed facts could possibly bear on the resolution of the legal issues in the case. Therefore, summary judgment was procedurally improper.

22

weighed the way that it was.  We are simply not the appropriate court to make these determinations, particularly when reviewing a grant of summary judgment. *See FindWhat Investor Grp.*, 658 F.3d at 1307 (noting that the district court must not make credibility determinations at summary judgment); *see also McIntosh Cnty. Branch of the NAACP*, 605 F.2d at 759 ("[s]ifting through the conflicting evidence and legal arguments" is a function of the district court).

Summary judgment in these cases presents particular challenges due to the fact-driven nature of the legal tests required by the Supreme Court and our precedent.  *See Nipper*, 39 F.3d at 1527; *see also Johnson v. DeGrandy*, 512 U.S. 997, 1011, 114 S. Ct. 2647, 2657 (1994) (noting that "the ultimate conclusions about equality or inequality of opportunity were intended by Congress to be judgments resting on comprehensive, not limited, canvassing of relevant facts"). The courts are required to "consider all relevant evidence," conduct a "searching practical evaluation of the past and present reality" of the challenged electoral system, and "gradually draw[] together a picture of the challenged electoral scheme and the political process in which it operates by accumulating pieces of circumstantial evidence." *Nipper*, 39 F.3d at 1527 (internal quotation marks omitted); *see Mallory v. Eyrich*, 707 F. Supp. 947, 954 (S.D. Ohio 1989) (finding that, even with pertinent statistics undisputed, "[f]ull development of the record is

23

necessary in order to determine the appropriate interpretation of the pertinent facts and to resolve the disputed issues presented by the experts' analyses").

As Appellants argue, a bench trial, with the benefit of live testimony and cross examination, offers more than can be elucidated simply from discovery in the form of deposition testimony.  We do not mean to suggest that the district court must again go through each of the *Gingles* preconditions and each of the Senate factors and simply reach different conclusions on remand (unless, of course, the evidence adduced at trial requires such a result).  Rather, the district court should consider the respective parties' evidence as brought forth with the benefit of live testimony and cross-examination, making all necessary credibility determinations and findings of fact to enable meaningful review.  Then, instead of requiring speculation on review, the record will reflect both the district court's determinations (made after live testimony and cross-examination) and the reasoning in support of those determinations.  *See Johnson*, 296 F.3d at 1074 (affording deference to the district court's findings "due to its special vantage point and ability to conduct an intensely local appraisal of the design and impact of a voting system").  Thus, if this case comes before this Court again, we will have the benefit of reviewing the court's full factual findings and credibility determinations under a clearly erroneous standard.  *See id.*

To be clear, we decline to address any issues related to the merits at this point.  We do note that Appellants attempt to draw our attention to irrelevant arguments that have no bearing on the merits of Appellees' claims or which are clearly foreclosed by precedent, as recognized by the district court in addressing certain of Appellants' arguments.[10]  However, we address procedural issues before the merits, and thus, we find that remand is warranted on the basis of the procedural issues herein identified alone.  Given the fundamental nature of the right at issue, the intensely local appraisal of the facts warranted, and the complex questions of fact and law that must be settled by the court below, we remand this case to the capable hands of the district court.  We appreciate the self-described "abundance of caution" that the district court exercised in carefully and thoughtfully addressing the parties' arguments, and we have no doubt that the court will again employ such caution in making appropriate findings after a bench trial.

## IV. CONCLUSION

For the reasons set forth above, we conclude that this case warrants a limited remand so that the district court may conduct a trial.  We note that the BOE did not have an opportunity to present its arguments against summary judgment; however,

---

[10] Consider, for example, the district court's comprehensive order denying the interlocutory appeal and stay of the case, which noted that the "deficiencies in the [BOC's] arguments are highlighted by the fact that they fail to point to a single § 2 case applying the framework they proffer" and that the "four controlling questions of law" identified by the BOC (and very similar to some of the arguments now raised on appeal) are instead "manufactured, wholly inaccurate recitations of the [c]ourt's ruling, and/or have no relation to the [c]ourt's order."

25

since we also find that summary judgment was improper against the BOC, we see no reason why the BOE's case cannot be heard with along with that of the BOC. The period for discovery had ended, and no party appealed the court's determination that discovery had closed for all parties.  Thus, on remand, the court may proceed to trial if it so desires, particularly given our finding that the record below merely wants for the evidentiary determinations that summary judgment does not permit.  Also, because we resolve this case on strictly procedural grounds, we do not reach the parties' arguments related to the court-drawn remedial plan.  In light of our decision and the reasons therefor, we decline to disturb the results of the election that took place under the court-drawn remedial plan.[11]

**REVERSED IN PART, VACATED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[11] *See, e.g.*, *Bradas v. Rapides Parish Police Jury*, 508 F.2d 1109, 1113 (5th Cir. 1975) (vacating and remanding the district court but finding that, "[t]o prevent needless expense and confusion, the tenure in office of the present members . . . elected under the [previously implemented plans] shall not be disturbed in the interim").

26