[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12217

_____

D. C. Docket No. 0:10-cv-61437-KMM

BRADLEY SEFF,

Plaintiff-Appellant,

versus

BROWARD COUNTY, FLORIDA,
a political subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 20, 2012)

Before MARCUS and BLACK, Circuit Judges, and EVANS,[*] District Judge.

BLACK, Circuit Judge:

_____

[*]Honorable Orinda Evans, United States District Judge for the Northern District of
Georgia, sitting by designation.

Appellant Bradley Seff filed this class action lawsuit, alleging that Appellee Broward County's (Broward's) employee wellness program violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq*. The district court granted Broward's motion for summary judgment, finding the employee wellness program fell within the ADA's safe harbor provision for insurance plans. We affirm.

## I.  BACKGROUND

Broward offers its employees a group health insurance plan. In 2009, employees enrolling in Broward's group plan became eligible to participate in a new employee wellness program sponsored by Broward's group health insurer, Coventry Healthcare (formerly known as VISTA).

The employee wellness program consisted of two components: a biometric screening, which entailed a "finger stick for glucose and cholesterol," and an "online Health Risk Assessment questionnaire." Coventry Healthcare used information gathered from the screening and questionnaire to identify Broward employees who had one of five disease states: asthma, hypertension, diabetes, congestive heart failure, or kidney disease. Employees suffering from any of the five disease states received the opportunity to participate in a disease management

2

coaching program, after which they became eligible to receive co-pay waivers for certain medications.

Participation in the employee wellness program was not a condition for enrollment in Broward's group health plan. To increase participation in the employee wellness program, however, Broward imposed a $20 charge beginning in April 2010 on each biweekly paycheck issued to employees who enrolled in the group health insurance plan but refused to participate in the employee wellness program. Broward suspended the charges on January 1, 2011.

Seff, a former Broward employee who incurred the $20 charges on his paychecks from June 2010 until January 1, 2011, filed this class action,[1] alleging that the employee wellness program's biometric screening and online Health Risk Assessment questionnaire violated the ADA's prohibition on non-voluntary medical examinations and disability-related inquiries. On the parties' cross-motions for summary judgment, the district court granted Broward's motion, finding that the ADA's safe harbor provision for insurance plans exempted the employee wellness program from any potentially relevant ADA prohibitions.

---

[1] The district court certified a class of plaintiffs consisting of "[a]ll current and former employees of Defendant who are/were employed by Broward County and enrolled in its health insurance since the inception of the 2009-2010 'voluntary' wellness program, and who have incurred the twenty dollar ($20.00) charge for failing to participate in the biometric screening *and* Health Risk Assessment."

3

Because it found that the employee wellness program fell within the ADA's safe harbor provision, the district court declined to address whether the program imposed non-voluntary examinations or inquiries that would have otherwise been prohibited under the ADA.

## II.  STANDARD OF REVIEW

This Court "reviews a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court." *Krutzig v. Pulte Home Corp*., 602 F.3d 1231, 1234 (11th Cir. 2010).  "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010).  We "may not weigh conflicting evidence or make credibility determinations of [our] own.  If the record presents disputed issues of fact, the court may not decide them . . . ." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citation omitted).

## III.  DISCUSSION

Under the ADA, a "covered entity" is prohibited from "requir[ing] a medical examination" and "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the

4

disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *see also Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290-91 (11th Cir. 2002).

The ADA, however, contains a safe harbor provision that exempts certain insurance plans from the ADA's general prohibitions, including the prohibition on "required" medical examinations and disability-related inquiries. 42 U.S.C. § 12201(c)(2). The safe harbor provision states that the ADA "shall not be construed" as prohibiting a covered entity "from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law." *Id*.

The district court granted summary judgment in Broward's favor based on its conclusion that the employee wellness program fell within the ADA's safe harbor provision. In reaching its conclusion, the district court found that the employee wellness program qualified as a "term[] of a bona fide benefit plan" within the meaning of the safe harbor provision because the employee wellness program constituted a "term" of Broward's group health plan. Seff's only argument on appeal is that the district court improperly ignored the deposition testimony of Lisa Morrison, which he claims gave rise to a dispute of material fact

5

regarding the employee wellness program's status as a "term[] of a bona fide benefit plan" under the safe harbor provision.[2]

Morrison, who was Broward's corporate representative and acting benefits manager, testified that the employee wellness program was not a term of Broward's benefit plan and that the employee wellness program was not a term contained in Broward's health and pharmacy plans.[3]  Her testimony is subject to two interpretations.  First, the testimony may be read as expressing Morrison's opinion that the employee wellness program was not a "term[] of a bona fide benefit plan" within the meaning of the ADA's safe harbor provision.  Understood this way, the testimony would constitute a conclusion of law.  *See Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009) ("The interpretation of a statute is a purely legal matter . . . ." (quotation omitted)); *Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 n.8 (11th Cir. 1989) ("[T]he interpretation of a

---

[2]  At oral argument, Seff conceded the only other issue raised in his briefs.

[3]  The transcript of Morrison's deposition states in relevant part:
> Q.  And the voluntary wellness program that was rolled out by Broward County was not a term of the actual insurance plans, correct?
> A.  Correct.
> . . .
> Q.  And that separate plan document [for the self-insurance plan for pharmacy], does it say anything about the voluntary wellness program?
> A.  No.
> Q.  Okay.  So the voluntary wellness program is not a term contained within the insurance plan for pharmacy?
> A.  For either one, health or pharmacy.

6

statute is a question of law for the court to decide."). Seff's argument would fail because Morrison's legal opinion alone would not create a factual dispute precluding summary judgment. *See Hayes v. Wilh Wilhelmsen Enters., Ltd.*, 818 F.2d 1557, 1560 (11th Cir. 1987).

Second, Morrison's testimony may be understood as asserting that the physical plan documents for Broward's group health plan do not contain a written term providing for the employee wellness program. This alternative reading construes Morrison's testimony as addressing an issue of fact regarding the contents of Broward's plan documents.[4] Read this way, Seff's argument would nonetheless fail because he presents no substantive argument that the issue of whether the employee wellness program was a written term contained within the physical plan documents for Broward's group health plan is material to the determination of the safe harbor provision's applicability. The parties do not cite, nor are we independently aware of, any authority suggesting that an employee wellness program must be explicitly identified in a benefit plan's written documents to qualify as a "term" of the benefit plan within the meaning of the ADA's safe harbor provision.

---

[4] The relevant plan documents were not included in the record.

7

The record establishes that Coventry Healthcare sponsored the employee wellness program as part of the contract to provide Broward with a group health plan, the program was only available to group plan enrollees, and Broward presented the program as part of its group plan in at least two employee handouts. In light of these facts, the district court did not err in finding as a matter of law that the employee wellness program was a "term" of Broward's group health insurance plan, such that the employee wellness program fell within the ADA's safe harbor provision. We affirm the district court's grant of summary judgment.

**AFFIRMED.**