[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  16-16161
_____

D.C. Docket No. 1:14-cv-00193-MHC


LUCKY CAPITAL MANAGEMENT, LLC,

Plaintiff - Appellant,

versus

MILLER & MARTIN, PLLC,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 21, 2019)

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK,[*] District Judge.

HUCK, District Judge:

Plaintiff-Appellant Lucky Capital Management, LLC ("Lucky"), was a member and investor in nValeo, LLC ("nValeo"). In early 2014, Lucky brought suit against nValeo's counsel, Miller & Martin, PLLC ("Miller & Martin"), asserting six causes of action. Lucky's claims against Miller & Martin included a legal malpractice claim Lucky obtained from nValeo by assignment in 2012 (Count One), tort claims for aiding and abetting or procuring a breach of fiduciary duty (Counts Two and Three), a fraudulent concealment claim (Count Four), a civil conspiracy claim (Count Five), and a claim for statutory damages pursuant to O.C.G.A. § 13-6-11 (Count Six).[1]

The district court dismissed Lucky's legal malpractice claim, holding it "ar[o]se out of an alleged fraud perpetrated on the assignor" and therefore was not assignable under O.C.G.A. § 44-12-24. The district court also dismissed Lucky's fraudulent concealment and civil conspiracy claims for failing to state a claim. The tort claims for aiding and abetting or procuring a breach of fiduciary duty survived Miller & Martin's motion to dismiss, and discovery proceeded accordingly. At the

---

[*]Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.
[1] Lucky's First Amended Complaint mistakenly included two "Count Five[s]." For clarity, the Court refers to the claim for statutory damages as "Count Six."

close of discovery, Miller & Martin moved for summary judgment as to those claims, which the district court granted. Lucky appeals.

## I.    FACTS AND PROCEDURAL BACKGROUND

In April 2010, nValeo engaged Miller & Martin to perform legal services. Miller & Martin did not act as general counsel to nValeo, and it billed nValeo for its legal services on an hourly basis. Jeffrey Ritchie was the managing member of nValeo. W. Scott McGinness, Jr. and R. Tyler Hand were among the Miller & Martin attorneys who worked on nValeo matters.

In May 2010, principals of what was to become Lucky began negotiations with nValeo for Lucky to purchase a membership interest in nValeo. Lucky conducted these negotiations through its counsel and nValeo did the same through Miller & Martin. The parties reached an agreement, which culminated in nValeo and Lucky entering into a Membership Interest Purchase Agreement (the "MIPA") on June 7, 2010. Pursuant to the MIPA, Lucky paid $500,000 for a 2% membership interest in nValeo.

On July 26, 2010, Lucky and nValeo entered into an Amended and Restated Membership Interest Purchase Agreement (the "AMIPA"). Under the AMIPA, Lucky acquired an additional 9% membership interest in nValeo by making four $500,000 investments in the company. In addition, the AMIPA imposed limits on

3

compensation of nValeo's officers and prohibited the payout of officers' bonuses. The AMIPA did not contain any prohibition on nValeo making loans to its officers.

The MIPA and AMIPA contained identical provisions disclosing the lack of a financial track record for nValeo and the "substantial investment risks" in purchasing the membership interests. Despite this, Lucky did not inspect nValeo's books before investing.

Between July and December 2010, Lucky invested a total of $2 million in nValeo. The parties acknowledge that almost immediately after Lucky's funds were deposited in nValeo's bank account Ritchie began withdrawing those funds for his own personal use.

On September 6, 2010, nValeo's Chief Operations Officer, Buddy Poole, sent an email to Hand, copying McGinness, stating:

> Tyler I need to get the paperwork to record Jeff [Ritchie]
> taking out loans from the company which he has needed
> to do from time to time to get moved to Austin, Tx. Please
> give me a call on Tuesday so we can discuss the details.
> Thanks.

On September 28, 2010, Hand sent Poole a Revolving Line of Credit Promissory Note (the "Promissory Note") for Ritchie's signature. The Promissory Note purported to allow nValeo to loan Ritchie up to $2 million.

In March 2011, Chad Smith, one of Lucky's principals, reviewed the financial records of nValeo for the first time. He saw Ritchie's withdrawals, which Poole had

4

recorded. Smith confronted Ritchie about the withdrawals, and Ritchie admitted that he took over $800,000 and used at least part of the money for personal use. nValeo never brought a product to market and went out of business. When the company failed, Lucky lost its investment. Lucky sued nValeo for its damages and, as part of the settlement of that litigation, nValeo assigned to Lucky any legal malpractice claim it might have against Miller & Martin. The underlying litigation followed.

Lucky filed its original complaint on January 22, 2014. After Miller & Martin filed a motion to dismiss, Lucky filed its First Amended Complaint ("FAC") on April 4, 2014. The FAC alleged six causes of action against Miller & Martin: (a) Legal Malpractice (Count One); (b) Aiding and Abetting a Breach of Fiduciary Duty (Count Two); (c) Procuring a Breach of Fiduciary Duty (Count Three); (d) Fraudulent Concealment (Count Four); (e) Civil Conspiracy (Count Five); and (f) Statutory Damages under O.C.G.A. § 13-6-11 for bad faith (mis-labeled Count Five).

Miller & Martin moved to dismiss the FAC (the "Motion to Dismiss"), and on February 10, 2015, the district court granted the Motion to Dismiss in part and denied it in part. Specifically, the district court dismissed Lucky's (a) Legal Malpractice claim; (b) Fraudulent Concealment claim; (c) Civil Conspiracy claim; and (d) bad faith litigation claim under O.C.G.A. § 13-6-11. The district court declined to dismiss Lucky's claim for aiding and abetting a breach of fiduciary duty,

5

and it ruled that the claim for procuring a breach of fiduciary duty was indistinct from and, therefore, subsumed in the aiding and abetting claim.

Following discovery, Miller & Martin filed its Motion for Summary Judgment regarding Lucky's remaining aiding and abetting a breach of fiduciary duty claim. After the motion was fully briefed, the district court granted summary judgment in Miller & Martin's favor. Final Judgment was entered on August 19, 2016, which Lucky timely appealed.

## II.    STANDARD OF REVIEW

"We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (citations and internal punctuation omitted).

This Court "reviews a district court's grant of summary judgment *de novo*, applying the same legal standards used by the district court." *Seff v. Broward Cty.*, 691 F.3d 1221, 1222 (11th Cir. 2012) (internal quotation marks omitted). "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* at 1223 (internal quotation marks omitted).

6

## III.    DISCUSSION

**A. Whether the district court erred in dismissing Lucky's legal malpractice claim**

nValeo assigned to Lucky any legal malpractice claim nValeo might have against Miller & Martin. In Count One, Lucky asserted nValeo's assigned legal malpractice claim against Miller & Martin, alleging:

> Pursuant to its contract with nValeo, the Defendant Miller & Martin had a duty to exercise ordinary care, skill, prudence and diligence in carrying out its work. This included a duty to comply with the general standards and procedures of the legal profession. The Defendant Miller & Martin *failed to exercise the required degree of care, skill, prudence and diligence required in the profession* by failing to report to its client the defalcations of Ritchie and by drafting a Promissory Note for Ritchie, which led Ritchie to believe that he could continue to misappropriate nValeo's assets under the guise that said takings were "loans." *These actions and omissions of Miller & Martin constitute legal malpractice, and were the proximate cause of financial injury to nValeo*. As assignee of nValeo's legal malpractice claims against Miller & Martin, Lucky is entitled to recover from Miller & Martin the damages to nValeo arising from this legal malpractice.
>
> Although as a procedural requirement O.C.G.A. § 9-11-9.1 does not apply in this Court, Plaintiff as stated above nonetheless filed with the complaint an affidavit of expert witness Thomas Scott, Esq., who is competent to testify, and who set forth "*specifically at least one negligent act or omission* claimed to exist and the factual basis" for such *claim of professional negligence* as against Miller & Martin, which is incorporated herein by reference.

7

(emphases added).[2]

The district court dismissed this claim, holding that O.C.G.A. § 44-12-24 prohibited the assignment of nValeo's legal malpractice claim and, thus, Lucky did not have standing to assert the legal malpractice claim against Miller & Martin. The district court's ruling was predicated on its finding that "because Plaintiff's alleged injuries arise out of fraud to nValeo, Plaintiff was barred from bringing this claim under O.C.G.A. § 4-12-24 as it read in 2011." At the time of nValeo's assignment of its claims against Miller & Martin, O.C.G.A. § 44-12-24 provided in relevant part:

> Except for those situations governed by Code Sections 11-2-210 and 11-9-406, a right of action is assignable if it involves, directly or indirectly, a right of property. A right of action . . . for injuries arising from fraud to the assignor may not be assigned.[3]

Lucky appeals that decision, arguing that its legal malpractice claim sounds in professional negligence and is therefore assignable under Georgia law. Lucky argues that nValeo's claim was assignable because it is based not on Ritchie's fraud on nValeo, but upon a claim that Miller & Martin was negligent in failing to report to nValeo Ritchie's misappropriation of funds and in drafting a Promissory

---

[2] While substantial background facts and fraud allegations are enumerated in the "Facts" section that precedes the claims, none of those facts or allegations are re-alleged in Count One, or in any other count.

[3] After Lucky's assignment, but before the dismissal of Count One, Georgia amended O.C.G.A. § 44-12-24 to prohibit the assignment of legal malpractice claims. The district court pretermitted the issue of whether O.C.G.A. § 44-12-24 in its current form applies retroactively to disallow the assignment in this case. Neither party has discussed on appeal whether the amended version of O.C.G.A. § 44-12-24 applies retroactively.

8

Note for Ritchie, which allegedly led Ritchie to believe that he could continue to misappropriate nValeo's assets. That is, Lucky contends that its claim is based upon the loss to nValeo by virtue of Miller & Martin's professional negligence.

A close examination of Lucky's malpractice claim shows that it is assignable because it is based on Miller & Martin's alleged professional negligence. The claim alleges that Miller & Martin "failed to exercise the required degree of care, skill, prudence and diligence required in the profession," and that this failure "constitute[d] legal malpractice, and [was] the proximate cause of financial injury to nValeo." Nowhere in Count One does Lucky mention, much less specifically allege, the elements of a fraud claim against Miller & Martin. Under Georgia law, the five elements of a fraud claim are: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. *Meyer v. Waite*, 606 S.E.2d 16, 20 (Ga. Ct. App. 2004). None of these elements are included in Count One.

In support of the claim, Lucky attached as Exhibit 6 to the original complaint an affidavit of its expert witness Thomas Scott,[4] which sets forth "specifically at least one negligent act or omission claimed to exist and the factual basis" for the

---

[4] Georgia law requires an affidavit to accompany a charge of professional malpractice asserted in state court against a professional licensed by the State of Georgia. O.C.G.A. § 9-11-9.1 Lucky alleged that such an affidavit was not required in this federal case but filed Scott's affidavit out of an abundance of caution and incorporated the affidavit into its legal malpractice claim.

claim. Thus, a fair reading of Count One reveals that it is a rather straightforward malpractice claim and is not premised on fraud on nValeo.

A legal malpractice action may, as here, be based upon the breach of a duty imposed by the contract of employment between the attorney and the client, and sounds in contract when it alleges negligence or lack of professional care. *Jones, Day, Reavis & Pogue v. Am. Envirecycle*, 456 S.E.2d 264, 266 (Ga. Ct. App. 1995). A legal malpractice claim may therefore qualify as an assignable cause of action under O.C.G.A. § 44-12-24. *See Villanueva v. First Am. Title Ins. Co.*, 740 S.E.2d 108, 110 (Ga. 2013). "[H]ere, the alleged legal malpractice is not based on fraud and does not involve an injury to the person, to the reputation, or to feelings." *Villanueva v. First Am. Title Ins. Co.*, 721 S.E.2d 150, 155 (Ga. Ct. App. 2011). It is therefore assignable under O.C.G.A. § 44-12-24, and the district court erred in dismissing Lucky's legal malpractice claim for lack of standing.

**B. Whether the district court properly dismissed Lucky's fraudulent concealment claim.**

Lucky next contends that the district court improperly dismissed Count Four when it "erroneously and improperly concluded that as a matter of law 'there was no legal duty for Defendant [Miller & Martin] to disclose any information to Plaintiff [Lucky].'" Because Lucky cannot establish that Miller & Martin owed a duty to disclose information to Lucky, a third party to its professional relationship with

10

nValeo, the district court did not err in dismissing Lucky's fraudulent concealment claim.

The five elements of a fraud claim also apply to a fraudulent concealment claim. *Meyer*, 606 S.E.2d at 20. Count Four does not allege that Miller & Martin made a false representation of a material fact to Lucky. Rather, Lucky relies on an omission of a material fact to meet the first element of its fraudulent concealment claim. Lucky asserts that Miller & Martin was aware of Ritchie's misappropriations, had a duty to inform Lucky them, but failed to do so.

As the district court recognized below, to allege an actionable "omission of a material fact" to satisfy the first fraud element, the plaintiff must show that the defendant had a legal duty to disclose that fact. *Infrasource, Inc. v. Hahn Yalena Corp.*, 613 S.E.2d 144, 146 (Ga. Ct. App.. 2005) ("Georgia law is abundantly clear that an obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts.") (internal brackets and quotation marks omitted); *Lilliston v. Regions Bank*, 653 S.E.2d 306, 310 (Ga. Ct. App. 2007) ("A party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact.").

Lucky contends that Miller & Martin had a duty to disclose Ritchie's misappropriation to Lucky, a non-client, relying on American Bar Association Model Rule 1.13 and Scott's affidavit. However, Lucky's reliance is not justified

11

under Georgia law. As the district court correctly observed, "[t]he existence of a legal duty is a question of law for the court," and "an expert affidavit does not, and cannot, create a legal duty where none existed before." *Garner & Glover Co. v. Barrett*, 738 S.E.2d 721, 723 (Ga. Ct. App. 2013) (citation and internal quotation marks omitted). Likewise, Model Rule 1.13 is legally insufficient to create a duty owed to non-client Lucky. *Davis v. Findley*, 422 S.E.2d 859, 861 (Ga. 1992) ("[W]hile the Code of Professional Responsibility provides specific sanctions for the professional misconduct of the attorneys whom it regulates, it does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof."); *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 453 S.E.2d 719, 720 (Ga. 1995) ("[A]n alleged violation of the Code of Professional Responsibility . . . standing alone, cannot serve as a legal basis for a legal malpractice action.") (internal citation omitted). Because neither Model Rule 1.13 nor Scott's Affidavit creates a legal duty for Miller & Martin to disclose to a third party, a duty to disclose to Lucky must arise from some other source not alleged here. The district court properly dismissed Lucky's fraudulent concealment claim against Miller & Martin.

## C. Whether the district court erred in dismissing Lucky's civil conspiracy claim.

The district court properly noted that conspiracy does not, of itself, furnish a cause of action. *Cook v. Robinson*, 116 S.E.2d 742, 744–45 (Ga. 1960). Rather, a

12

conspiracy only exists if there is an underlying cause of action which is the subject of the conspiracy. *Id.* at 745 (citing *Mills v. Moseley*, 179 S.E. 159, 161 (Ga. Ct. App. 1935)). The district court dismissed Count Five, ruling that there was no underlying cause of action because it had already "ruled that Plaintiff failed to state a claim for fraudulent concealment [committed by Miller & Martin as to Lucky]."

Lucky challenges this ruling, claiming that the district court did not take into account its allegations that Ritchie defrauded Lucky, that Ritchie fraudulently concealed his misappropriation of funds from Lucky, and that Miller & Martin conspired with Ritchie to assist Ritchie in his fraud. In essence, Lucky argues that Ritchie's actions provide the underlying tort, in which Miller & Martin conspired, and Miller & Martin can therefore be held liable for conspiring with Ritchie. We agree.

As noted above, the district court properly dismissed Lucky's fraudulent concealment claim because Miller & Martin did not owe a duty to disclose Ritchie's misappropriations to Lucky, a non-client. However, Lucky's civil conspiracy claim does not suffer from the same inadequacy. This is because Lucky alleges a different underlying, actionable claim—Ritchie's defrauding Lucky—which is the subject of the alleged conspiracy.

Count Five alleges that Miller & Martin "entered into an unlawful civil conspiracy with Ritchie and Poole to conceal Ritchie's fraud and to induce Lucky to

13

continue to make purchase payments to nValeo that Ritchie would misappropriate."

Lucky alleges a civil conspiracy predicated on Ritchie's underlying fraud and

fraudulent concealment, not Miller & Martin's fraudulent concealment. Thus, there

is no requirement that Miller & Martin have a legal duty to disclose to Lucky.

To state a conspiracy claim, Lucky must first allege that Ritchie defrauded

Lucky and then that Miller & Martin conspired with Ritchie to do so. Under Federal

Rule of Civil Procedure 9(b), fraud-based allegations must be pleaded "with

particularity." Rule 9(b) is satisfied by identifying the specific statements,

representations, or omissions; the time and place of such statement and the person

responsible; the content of the statement and how it misled the plaintiff; and what

the defendant obtained as a result of the fraud. *Brooks v. Blue Cross & Blue Shield

of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Lucky has generally alleged

these facts.[5] In particular, Lucky alleges that "[a]lthough Ritchie represented that

additional funds were necessary for nValeo to meet its business objectives, Ritchie

was soliciting funds from Lucky so that he could misappropriate them. Further

negotiations ensued, which, with the participation of Miller & Martin as counsel for

nValeo, culminated in the execution of an Amended and Restated Membership

Interest Purchase Agreement dated July 26, 2010." This allegation identifies the

---

[5] To the extent that Lucky has alleged insufficient specifics of Ritchie's fraud, those specifics could be provided by amending this conspiracy count.

14

statement, its content, when it occurred (prior to the parties' execution of the AMIPA), the person responsible, and how the statement misled Lucky into investing in nValeo. Lucky also alleges that "[p]ursuant to said Amended and Restated Membership Interest Purchase Agreement, Lucky made investments in nValeo totaling $2,000,000 between July and December, 2010." Finally, Lucky alleges that "Ritchie succeeded in draining off the assets of nValeo such that the company failed and Lucky lost the entire sum it had invested in nValeo." These two statements identify what Ritchie obtained as a result of his fraud and, once again, how Lucky was misled. Therefore, Lucky has adequately pleaded the underlying tort to support Lucky's conspiracy claim.[6]

Next, Lucky must sufficiently allege that Miller & Martin entered into the civil conspiracy with Ritchie. "A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort . . . The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *Metro Atlanta*

---

[6] Notably, Miller & Martin repeatedly refers to "Mr. Ritchie's improper withdrawals" and acknowledges that Ritchie "improperly took funds from nValeo." Miller & Martin apparently concedes that Ritchie misappropriated nValeo funds and does not appear to dispute that Lucky relied on Ritchie's misrepresentations when it invested in nValeo. Regardless, since the district court dismissed Lucky's civil conspiracy claim pursuant to Miller & Martin's motion to dismiss, the Court is required to accept the allegations in the complaint as true and construe them in the light most favorable to Lucky. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

*Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.*, 780 S.E.2d 311, 318 (Ga. 2015) (citing *Cook*, 116 S.E.2d at 744–45). The essential element of a civil conspiracy is a common design. *Cook*, 116 S.E.2d at 745.

Here, Lucky has sufficiently pleaded that Miller & Martin entered into a conspiracy with Ritchie to defraud Lucky and conceal Ritchie's fraud. For example, Lucky alleges that "[e]ven though Defendant knew that Ritchie had misappropriated and was misappropriating Lucky's investment funds . . . Defendant continued to conceal from Lucky Ritchie's misappropriation and breach of his fiduciary duties to induce Lucky to continue to purchase membership interests in nValeo characterize his wrongful takings from nValeo as 'loans.'" Lucky also alleges that Miller & Martin conspired with Ritchie by "drafting a Promissory Note for Ritchie's signature with the object and intent to mischaracterize Ritchie's misappropriations as 'loans,' and by continuing a business-as-usual relationship with Lucky to exclude suspicion or prevent inquiry." Although these allegations are minimal, the existence of a conspiracy may "be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances." *Nottingham v. Wrigley*, 144 S.E.2d 749, 751 (Ga. 1965) (citation omitted).

The district court erred in dismissing Lucky's civil conspiracy claim. As the district court noted, "Plaintiff alleges that Defendant conspired with Mr. Ritchie and Mr. Poole to fraudulently conceal Mr. Ritchie's unlawful activity." According to the

16

district court, Lucky's inability to bring a fraudulent concealment claim against Miller & Martin because *Miller & Martin* did not owe a duty to Lucky precluded Lucky's civil conspiracy claim. However, the district court overlooked the fact that *Ritchie* owed a duty to Lucky because of Lucky's status as an investor in, and member of, nValeo. Lucky alleges that Miller & Martin conspired in assisting Lucky's breach of that duty. Whether Miller & Martin had a duty to Lucky is irrelevant to the conspiracy claim alleged here. Because Ritchie's alleged fraud and fraudulent concealment serves as the underlying tort for the civil conspiracy claim against Miller & Martin, Lucky sufficiently pleaded a claim for civil conspiracy.

### D. Whether the district court properly granted summary judgment on the aiding and abetting a breach of fiduciary duty claim.

Lucky alleges that Miller & Martin is liable for aiding and abetting a breach of fiduciary duty. In Georgia, a claim for aiding and abetting a breach of fiduciary duty requires a showing of each of the following elements:

> (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

17

*Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 379 (Ga. Ct. App. 2006) (footnotes and citations omitted).

The district court held that Lucky failed to present evidence that Miller & Martin undertook any act to procure a breach of a fiduciary duty or, even if it did, that Miller & Martin did so with the requisite malice and intent to injure. In particular, the district court noted that Lucky presented no evidence that Miller & Martin was aware of the impropriety of Ritchie's withdrawals and that Miller & Martin "simply was requested to prepare a promissory note and not to audit any documents or determine the propriety of nValeo's actions." Lucky challenges these findings, asserting that it presented sufficient evidence to draw an inference in its favor on a question of material fact.

In support, Lucky references two pieces of evidence that support its assertion that a question of material fact is presented. First, Lucky asserts that Buddy Poole, nValeo's Chief Operating Officer, admitted that he shared with Miller & Martin "three basic points:" that Ritchie (1) was taking money to which he was not entitled; (2) was concerned about that money being construed as salary or income to him in terms of his divorce proceeding; and (3) intended to pay the money back. Lucky supports this assertion with the following testimony by Poole:

> Q: Did you share that information or those three basic points with the lawyers at Miller & Martin, Mr. Hand and Mr. McGinness?

18

A: Yeah, I don't recall the conversation.

Q: Okay.

A: I mean I'm reading this. I had a conversation it clearly says, because he said Buddy called today. I don't remember the conversation, though.

According to Lucky, the word "[y]eah" before the repeated statements that Poole did not remember the conversation establishes that Poole informed Miller & Martin of the impropriety of Ritchie's withdrawals. We reject Lucky's interpretation based, in part, on Poole's further clarifying testimony:

Q. Do you believe that Mr. Hand understood that Ritchie had taken money that he shouldn't have taken?

A. I don't have any idea. I don't know.

Q. Okay. What about Mr. McGinness?

A. I don't know.

Q: Well, do you think you concealed from Mr. Hand and Mr. McGinness that Mr. Ritchie had taken money that he wasn't entitled to?

A: I don't recall ever talking to them about the amounts, dates, or when, to the -- I don't recall the conversations at all, frankly. But I'm sure, reading this and these other things that I knew he had taken money and he had to pay it back. . . .

19

Contrary to Lucky's interpretation, Poole's testimony indicates that he did not recall telling Miller & Martin that Ritchie made improper withdrawals. As such, Lucky has failed to create an issue of material fact based on Poole's testimony.[7]

Lucky next relies on a voicemail message from nValeo's outside accountant, Pam Duggar, to Hand in its attempt to establish that Miller & Martin was aware of Ritchie's improper withdrawals of nValeo's funds. The voicemail stated that "Jeff Ritchie has taken a lot of money out of this company, umm, in the last seven (7) months and it just. . . . The numbers just don't fit with what they are doing and I'm not sure what to do with all this money he's taken." Duggar testified that her voicemail was merely intended to determine how to classify money (as revenue or a capital contribution) nValeo received from investors prior to the investment by Lucky; she did not mention the dates, amounts, or, most importantly, the alleged impropriety of any withdrawals.

According to Lucky, Duggar's vague voicemail, combined with an agreement that allowed nValeo to loan money to Ritchie, must have made Miller & Martin aware of the fact that Ritchie was misappropriating nValeo's money. Such an unsupported assumption does not defeat summary judgment.

---

[7] Further, the "three basic points" of the original question posed to Poole included whether Poole told Miller & Martin that Ritchie "intended to pay the money back." Even assuming that Poole gave Miller & Martin this information, and there is no direct evidence that he did, nValeo could properly make loans to its executives. Thus, Poole's testimony would not create a question of material fact as to whether Miller & Martin was aware that the withdrawals were improper even under Lucky's proposed interpretation.

Finally, Lucky relies on *Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-cv-195 WLS, 2016 WL 1274124 (M.D. Ga. March 31, 2016) for the proposition that nValeo's $20,000 payment to Miller & Martin for past legal services before Miller & Martin would prepare the Promissory Note creates a reasonable inference that Miller & Martin must have known of Ritchie's misappropriations, and that knowledge caused Miller & Martin to demand the $20,000 payment. Lucky's reliance on *Martin* is misplaced. In *Martin* the court determined that a trustee's negotiation of the sale of "virtually worthless" stock for $39,000 constituted an act to procure a breach of fiduciary duty on the part of the buyer. *Id*. at *2, 7. According to the *Martin* court, "[i]t could be inferred that [the trustee's] negotiation of $39,000 for worthless stock with the knowledge of [the company's] deteriorating financial condition could constitute an act to procure [a] breach of fiduciary duties . . ." *Id*. at *7. *Martin* is not analogous to the present situation. Here, nValeo paid a debt it owed to Miller & Martin for past legal services. That nValeo paid its bills does not create an inference that Miller & Martin was aware of Ritchie's misappropriations, particularly where, as here, Ritchie was not involved in the payment. Further, even assuming that Miller & Martin insisted on the payment before drafting the Promissory Note,[8] that would not create an inference that Miller & Martin was aware of Ritchie's misappropriations. Instead, and unlike

---

[8] Lucky has presented no evidence to support this.

21

*Martin*, it would simply imply that the attorneys at Miller & Martin insisted on being paid for their past work before providing any additional work product to their client, a commonplace and reasonable position.

Lucky has failed to provide any evidence that Miller & Martin was aware of Ritchie's misappropriations. Without even knowing that Ritchie was stealing money from nValeo, Miller & Martin cannot be held liable for aiding and abetting a breach of fiduciary duty. Moreover, Lucky has failed to establish that Miller & Martin acted with malice and the intent to injure. *See White v. Shamrock Bldg. Sys., Inc*., 669 S.E.2d 168, 171–72 (Ga. Ct. App. 2008) (focusing on whether the defendants charged with aiding and abetting took "any affirmative steps to encourage" the alleged wrongdoing); *Insight Tech*., 633 S.E.2d at 379 n.13 ("The act [undertaken to procure a breach] is malicious when the thing done is with the knowledge of plaintiff's rights, and with the intent to interfere therewith.") (citing *Arford v. Blalock*, 405 S.E.2d 698, 704 (Ga. Ct. App. 1991)). The district court properly granted summary judgment on Lucky's claim for aiding and abetting a breach of fiduciary duty.

## CONCLUSION

The district court improperly dismissed Count One, Lucky's legal malpractice claim based on Miller & Martin's professional negligence, as unassignable under O.C.G.A. § 44-12-24. The district court properly dismissed Count Four, Lucky's

22

fraudulent concealment claim against Miller & Martin, because Miller & Martin did not owe a duty to disclose information to non-client Lucky. The district court improperly dismissed Count Five, Lucky's civil conspiracy claim against Miller & Martin, because Ritchie's fraudulent activities and fraudulent concealment provided the underlying tort for the claim and Lucky adequately pleaded Miller & Martin's involvement in the civil conspiracy. Finally, the district court properly granted summary judgment on Counts Two and Three, Lucky's claim for aiding and abetting a breach of fiduciary duty because Lucky identified no evidence that Miller & Martin was aware of Ritchie's misappropriations or acted with malice and intent to injure Lucky. Therefore, the Court **REVERSES** the dismissal of Count One and Count Five for legal malpractice and civil conspiracy, respectively, and **AFFIRMS** the district court's dismissal of Count Four for fraudulent concealment and grant of summary judgment as to Counts Two and Three for aiding and abetting a breach of fiduciary duty.

23

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  16-16161

_____

D.C. Docket No. 1:14-cv-00193-MHC

LUCKY CAPITAL MANAGEMENT, LLC,

Plaintiff - Appellant,

versus

MILLER & MARTIN, PLLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK,[*] District Judge.

BY THE COURT:

On rehearing, the Court's July 3, 2018 opinion is readopted with the following addition: the District Court's grant of summary judgment as to Plaintiff-Appellant's claim for statutory damages under O.C.G.A. § 13-6-11 (Count Six[9]) is **REVERSED**.

---

[*]Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

[1] As the July 3, 2018 opinion noted, the First Amended Complaint included two "Count Five[s]," so we referred to the claim for statutory damages as "Count Six."

1