[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11674

_____

THAI MEDITATION ASSOCIATION
OF ALABAMA, INC.,
(the "Center"),
SIVAPORN NIMITYONGSKUL,
VARIN NIMITYONGSKUL,
SERENA NIMITYONGSKUL,
PRASIT NIMITYONGSKUL,

Plaintiffs-Appellants,

*versus*

CITY OF MOBILE, ALABAMA,

Defendant-Appellee

2                    Opinion of the Court                    22-11674

CITY OF MOBILE PLANNING
COMMISSION, et al.,

                                                    Defendants.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:16-cv-00395-TFM-MU

_____

Before WILSON, JILL PRYOR, Circuit Judges, and CONWAY,[*] District
Judge.

WILSON, Circuit Judge:

In this long-running property use dispute, the plaintiffs, the
Thai Meditation Association of Alabama and four of its organizers
(collectively, TMAA), seek to convert a property zoned for residen-
tial use into a meditation center. In *Thai Meditation Association of
Alabama v. City of Mobile*, 980 F.3d 821 (11th Cir. 2020) (*TMAA I*), we
reviewed the outcome of a bench trial that ended in judgment for
the City of Mobile on all counts. We affirmed in part but remanded
three counts for further consideration. *Id.* at 841. The vacated and

---

[*] Honorable Anne C. Conway, United States District Judge for the Middle Dis-
trict of Florida, sitting by designation.

remanded claims consisted of: (1) a substantial burden challenge under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc(a)(1); (2) a Free Exercise challenge under the First Amendment; and (3) a state law challenge under the Alabama Constitution's Religious Freedom Amendment (ARFA). On remand, the district court granted summary judgment to the City on all three counts, and this appeal followed.

After careful review of the record and with the benefit of oral argument, we conclude that summary judgment was improper, for either party, on the RLUIPA claim; summary judgment was proper on the Free Exercise claim; and the City has failed to carry its burden to satisfy strict scrutiny on the ARFA claim. Accordingly, we **VACATE** in part, **AFFIRM** in part, and **REVERSE** in part.

## I.    Background

The details of this case were thoroughly recounted in *TMAA I*, so we only recount the facts essential to this decision. TMAA is a Buddhist religious organization belonging to the Dhammakaya school of Buddhism. TMAA's "purpose is teaching and research into growth and development of mind and spirit through meditation and expanding the knowledge of Buddhism." *TMAA I*, 980 F.3d at 826 (cleaned up). TMAA has been seeking a permanent home in Mobile, Alabama for several years now. In 2007, it operated out of a converted house in a residential neighborhood. After neighbors complained and TMAA was unable to obtain the proper zoning authorization, it moved to its present location inside a

shopping center.  Because this location is on a commercial street and shares a building with commercial businesses, TMAA alleges it is far too loud and disruptive for them to meditate—that is, to practice their religion.  TMAA also alleges their current location is too small to allow them to hold classes to teach others about their religion. *Id.*

In Mobile, there are two zoning classifications relevant to this appeal.  The first is the R-1 zoning designation, which allows for residential usage as of right and allows for other uses—like religious uses—subject to "planning approval" by the Planning Commission.  The second is the commercial zoning designation, which allows certain uses—including religious uses—by right.  TMAA's first location, the converted house, was in an R-1 district.  TMAA's second and current location is in a commercial district.

In 2015, TMAA bought the house that is the subject of this litigation, the Eloong Drive property.  Like TMAA's original location, the Eloong Drive property is located in an R-1 residential district and thus required planning approval to be put to a religious use.  Before purchasing the property, TMAA engaged in pre-approval meetings with City officials, and TMAA alleges they received positive feedback on their preliminary plans.  When TMAA finally submitted its application, it received immense pushback from the public.  Many public comments focused on, and objected to, the Buddhist character of TMAA's proposed usage.  Some questioned whether TMAA's usage was even religious at all.  Some commentors objected to TMAA's application because of concerns

about compatibility and traffic in the small neighborhood in which the Eloong Drive property is located. Ultimately, noting those compatibility concerns, the Planning Commission denied TMAA's application, and the City Council denied TMAA's appeal. This suit followed.

TMAA alleged six counts against the City, and the district court originally ruled in favor of the City on all six counts. In *TMAA I*, we vacated the district court's analysis of the RLUIPA substantial burden claim, the Free Exercise claim, and the ARFA claim. 980 F.3d at 841. On remand, the parties filed cross-motions for summary judgment on these three counts. The district court again granted summary judgment to the City on all three claims. We address each of these in turn.

## II.    Standard of Review

We review the district court's grant or denial of summary judgment de novo, applying the same legal standard as the district court. *Seff v. Broward Cnty.*, 691 F.3d 1221, 1222–23 (11th Cir. 2012). Summary judgment is proper where, construing all facts in favor of the non-movant, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. *Id.* at 1223. This appeal arises from the district court's resolution of cross-motions for summary judgment. "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute." *Ga. State Conf. of NAACP v. Fayette Cnty.*, 775 F.3d 1336, 1345 (11th Cir. 2015) (cleaned up) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)). But we have cautioned

that the mere filing of cross-motions "do[es] not automatically empower the court" to enter summary judgment for one party. *Id.* (quoting *La Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)). Instead, the district court must methodically take each motion in turn and construe all the facts in favor of the non-movant for each. If, after engaging in this analysis, the district court determines no genuine issue of material fact exists, then it may appropriately enter summary judgment for a party.

## III.   RLUIPA Substantial Burden

"Congress sought, through RLUIPA, to protect religious land uses from discriminatory processes used to exclude or otherwise limit the location of churches and synagogues in municipalities across the country." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1236 (11th Cir. 2004). Under RLUIPA,

> (a)(1) No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
> > (A) is in furtherance of a compelling governmental interest; and
> >
> > (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1).

Shortly after the passage of RLUIPA, we interpreted this substantial burden provision in *Midrash Sephardi*. There, we held that "a 'substantial burden' must place more than an inconvenience on religious exercise; a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Sephardi*, 366 F.3d at 1227. In *TMAA I*, we applied this standard and clarified that "it isn't necessary for a plaintiff to prove . . . that the government required her to *completely surrender* her religious beliefs; modified behavior, if the result of government coercion or pressure, can be enough." *TMAA I*, 980 F.3d at 831. We then articulated six factors that the district court should consider on remand.[1]

---

[1] The non-exhaustive factors include: (1) "whether the plaintiffs have demonstrated a genuine need for new or more space—for instance, to accommodate a growing congregation or to facilitate additional services or programming"; (2) "the extent to which the City's decision, and the application of its zoning policy more generally, effectively deprives the plaintiffs of any viable means by which to engage in protected religious exercise"; (3) "whether there is a meaningful 'nexus' between the allegedly coerced or impeded conduct and the plaintiffs' religious exercise"; (4) "whether the City's decisionmaking process concerning the plaintiffs' applications reflects any arbitrariness of the sort that might evince animus or otherwise suggests that the plaintiffs have been, are being, or will be . . . jerked around"; (5) "whether the City's denial of the plaintiffs' zoning applications was final or whether, instead, the plaintiffs had (or have) an opportunity to submit modified applications that might satisfy the City's objections"; and (6) "whether the alleged burden is properly attributable to the government . . . or whether the burden is instead self-imposed." *TMAA I*, 980 F.3d at 831–32 (footnotes omitted).

While we received extensive briefing on how to apply this framework, including from five groups of *amici curiae*, we will not reach the merits of this issue today.  Despite the parties' representation that there are no disputed facts remaining in this case, we cannot see how that is true.  For one thing, in the district court, both TMAA and the City filed lengthy objections to the other's statement of undisputed facts and substituted their own statements of undisputed facts.  *See NAACP*, 775 F.3d at 1345 (noting this situation suggests summary judgment is inappropriate).  Moreover, as will be discussed below, these factual disputes are both genuine and material.  Accordingly, due to these disputes, the district court should not have entered summary judgment for either party in this case on the RLUIPA count.

We provide two illustrative—though not exhaustive—examples of material factual disputes that remain.  One of the factors relates to whether there are alternative sites for TMAA to use. *TMAA I*, 980 F.3d at 832.  The City argues that TMAA owns a 100-acre parcel that would be suitable for its meditation center. TMAA's land-use expert has opined that this site is unsuitable for TMAA's intended use.  The availability of a large property similar to the Eloong Drive property would weigh heavily on this factor. A factual dispute like this on a key factor precludes the issuance of summary judgment at this stage.

Similarly, another factor deals with whether the Planning Commission's denial of TMAA's application reflected arbitrariness. *Id*.  TMAA cites several specific instances of the Planning

Commission deviating from its typical procedure, failing to work with TMAA, and allegedly editing the minutes of its meetings to obscure the true reason for the denial of planning approval. The City disputes that there were any irregularities in its processes, and denies the minutes were edited. Again, only one of these accounts can be right, and it bears on an important factor of the substantial-burden analysis laid out in *TMAA I*.

Because factual disputes like these preclude the issuance of summary judgment to either party, we vacate the entry of summary judgment on the RLUIPA count.[2]

## IV.    Free Exercise Clause

Turning next to the district court's entry of summary judgment on TMAA's First Amendment Free Exercise claim. In *TMAA I*, we directed the district court to independently evaluate the Free Exercise claim, rather than cross-reference its analysis of—and expressly tether its rejection to—the RLUIPA substantial burden issue. *TMAA I*, 980 F.3d at 833. However, on remand, the district

---

[2] One option available to the district court in this situation would have been to convert the cross-motions for summary judgment into a bench trial. *See NAACP*, 775 F.3d at 1345–46 (describing this option); *see also Voigt*, 700 F.2d at 349. If the court had done so, it would have proceeded under Federal Rule of Civil Procedure 52, which would have mandated compliance with Rule 52(a)'s requirement that findings of fact and conclusions of law be entered. *See* Fed. R. Civ. P. 52(a)(1). If this option had been taken, there would be a clear factual record enabling our review of the district court's legal conclusions. But that did not happen here. Instead, the district court entered summary judgment in this matter and that is how the parties have addressed the issues on appeal.

court carried over much of its original analysis after briefly concluding that "Plaintiffs have not shown the Zoning Ordinance targeted religious practices or imposed burdens on religious conduct in a selective manner[, therefore] rational basis review applies." Again, this was error. In light of this error, we will review the record to determine whether the City was properly entitled to summary judgment on TMAA's Free Exercise claim. *See Gundy v. City of Jacksonville*, 50 F.4th 60, 70 (11th Cir. 2022) ("We may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court.") (citations omitted).

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. However, government action may incidentally burden religious practices—subject to rational basis review—so long as it is both "neutral" and "generally applicable." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 880 (1990). The Supreme Court recently clarified these two principles:

> A government policy will not qualify as neutral if it is "specifically directed at . . . religious practice." . . . A government policy will fail the general applicability requirement if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," or if it provides "a mechanism for individualized exemption."

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (citations omitted). Notably, we have found the enforcement of zoning ordinances as both neutral and generally applicable. *See First Assembly of God of Naples, Fla., Inc. v. Collier Cnty.*, 20 F.3d 419, 422–24 (11th Cir. 1994). Several of our sister circuits have come to the same conclusion.[3]

Here, the R-1 zoning designation process satisfies *Smith*'s requirements. First, the planning approval process is neutral. We affirmed that TMAA failed to prove that a majority of the Planning Commission acted with an intent to discriminate on the basis of religion, *TMAA I*, 980 F.3d at 836, and because TMAA raised only general applicability challenges in their present brief, they have abandoned any additional neutrality arguments on appeal. *See Sapuppo v. Allstate Floridians Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Second, the R-1 planning approval process does not provide the type of discretionary exemption that violates general applicability. When a use requires planning approval, the ordinances impose specific criteria that guide the approval or denial of a particular use.[4] While the approval process necessarily requires individual

---

[3] *See, e.g.*, *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006); *C.L. for Urban Believers v. City of Chicago*, 342 F.3d 752, 764–65 (7th Cir. 2003); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 277 (3d Cir. 2007).

[4] The use must be "appropriate with regard to transportation and access, water supply, waste disposal, fire and police protection and other public facilities"; not cause "undue traffic congestion or create[e] a traffic hazard"; and be "in harmony with the orderly and appropriate development of the district in

12                    Opinion of the Court                    22-11674

assessment, it is not sufficient to establish an individualized exemption.  The criteria apply to all property uses eligible for approval, religious or secular.  Furthermore, the scheme does not allow for the kind of blanket discretionary mechanism that historically fails *Smith*'s general applicability requirement.  *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1878 (2021) (holding that a city official's "sole discretion" to deny exceptions from the non-discrimination referral provision for a Catholic adoption center is not generally applicable).

As a result, Mobile's R-1 zoning designation process is both neutral and generally applicable, subjecting it to rational basis review.  Because rational basis review is "highly deferential to government action," we agree that the City's asserted interests in traffic safety and zoning are "rationally related to a legitimate government interest."  *See Jones v. Governor of Fla.*, 950 F.3d 795, 809 (11th Cir. 2020) (per curiam).  We therefore affirm the entry of summary judgment on TMAA's Free Exercise count.

### V.    Alabama Religious Freedom Amendment

Turning now to TMAA's state constitutional law claim.  The ARFA's purpose "is to guarantee that the freedom of religion is not burdened by state and local law; and to provide a claim or defense to persons whose religious freedom is burdened by government."  Ala. Const. amend. 622, § III.    The ARFA applies to local

which the use is located."  *See* Mobile Code of Ordinances § 64-12(1)(b) (amended and reincorporated in 2022).

governments, like the City of Mobile, *id.* § IV(3), and provides that they "shall not burden a person's freedom of religion" unless the city can demonstrate that the burden is the least restrictive means of achieving a compelling government interest. *Id.* §§ V(a), V(b). Thus, ARFA, like RLUIPA, requires the government's action to satisfy strict scrutiny to survive review. However, the ARFA is triggered by a much lower burden on religious freedom than RLUIPA. While RLUIPA requires a "substantial" burden, we held in *TMAA I* that under ARFA, "*any* burden—even an incidental or insubstantial one—suffices to trigger strict scrutiny." *TMAA I*, 980 F.3d at 840.

We also held that TMAA's efforts to construct a meditation center and relocate to a site more conducive to their religious practices implicated TMAA's religious freedom rights. *Id.* at 829. While it is still uncertain at this stage whether the City's planning decision is a *substantial* burden on TMAA's rights, it clearly is *a* burden. It therefore clears *TMAA I*'s low bar to trigger ARFA's strict scrutiny review.

Before turning to the strict scrutiny analysis, we first address the City's threshold argument that the ARFA simply does not apply to zoning decisions like the one at issue here. The ARFA broadly applies to "[a]ny government statute, regulation, ordinance, administrative provision, ruling guideline, requirement, or any statement of law whatever." Ala. Const. amend. 622, § IV(4); *see also id.* § VI(a) ("This amendment applies to all government rules and implementations thereof, whether statutory or otherwise . . . ."). The City's zoning regulations and approval decisions fall within the

wide breadth of this definition.  The City argues the ARFA's conception of "religious freedom" is co-extensive with Article I, § 3 of the Alabama Constitution, and thus narrower than that of the First Amendment.

We decline to accept this argument because it is contrary to the observed practice of Alabama courts interpreting the Alabama Constitution's guarantee of freedom of religion in lockstep with the federal Constitution's First Amendment guarantees.  *See, e.g.*, *Ex parte Hilley*, 405 So. 2d 708, 711 (Ala. 1981) ("Viewed in the light of the free exercise clauses of the United States Constitution, amend. I, and the Alabama Constitution, art. I, § 3 . . . ."); *Rheuark v. State*, 601 So. 2d 135, 139–40 (Ala. Crim. App. 1992) (citing United States Supreme Court precedent to resolve a challenge under both the federal First Amendment and the Alabama Constitution).  And the Alabama Supreme Court has expressly held that Article I, § 3 of the Alabama Constitution is "not more restrictive than the Federal Establishment of Religion Clause in the First Amendment to the United States Constitution." *Alabama Educ. Ass'n v. James*, 373 So. 2d 1076, 1081 (Ala. 1979); *see also id.* (describing Article I, § 3 as "the Alabama counterpart of the Religion *Clauses* of the First Amendment to the United States Constitution" (emphasis added)).  All of this evidence tends to cast doubt on the City's cabined view of the Alabama Constitution's protections for religious freedom.

Finally, we are persuaded that a narrow cabining of ARFA would be inconsistent with its ratification context, *see* Ala. Const. amend. 622, § II(4)–(6) (describing ARFA in the context of federal

constitutional law developments in *Employment Division v. Smith*, 494 U.S. 872 (1990) and *City of Boerne v. Flores*, 521 U.S. 507 (1997)),[5] and its broad remedial purpose, *id.* § VII(a) ("This amendment shall be liberally construed to effectuate its remedial and deterrent purposes."). Given this evidence, we feel comfortable rejecting the City's argument that ARFA and Article I, § 3 of the Alabama Constitution have a narrower conception of religious freedom than the First Amendment. And accordingly, we conclude that the ARFA applies to the City's zoning decision to the extent that it restricts TMAA's, or its members', right to worship freely and practice their religion as they conceive it.

⋆    ⋆    ⋆

Having resolved that threshold question, we turn to the strict scrutiny analysis. To survive strict scrutiny under ARFA, the City must carry its burden to demonstrate that its planning decision is the least restrictive means to achieve a compelling government interest. Ala. Const. amend. 622, § V(b). A compelling government interest is one that advances "interests of the highest order." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). Further, "generalized statement[s] of interests, unsupported by specific and reliable evidence" will not do. *See Davila v. Gladden*, 777 F.3d 1198, 1206 (11th Cir. 2015). Allowing government entities to state their interest at the highest levels of

_____

[5] *Compare with Midrash Sephardi*, 366 F.3d at 1236–37 (describing a similar context for RLUIPA).

generality permits them to shrug off the heavy burden that strict scrutiny analysis is designed to impose.

Here, the district court concluded that the city satisfied strict scrutiny because denial of TMAA's application was the least restrictive means to further "[t]he City's interest to preserve the character of the property and the surrounding neighborhood." *Thai Meditation Ass'n of Ala. v. City of Mobile*, 599 F. Supp. 3d 1120, 1144 (S.D. Ala. 2022)  The City also argues that concerns about increased traffic at the Eloong Drive Property constitute a compelling government interest.  We find these asserted interests lacking.

To begin, we have never held that neighborhood character or zoning are compelling government interests sufficient to justify abridging core constitutional rights.  Indeed, in *Solantic, LLC v. City of Neptune Beach*, we held that "aesthetics and traffic safety" were not compelling government interests justifying content-based restrictions on signs.  410 F.3d 1250, 1267–69 (11th Cir. 2005).  Similarly, a group of *amici curiae* in this case direct us to *Dimmit v. City of Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993), where we again held that "visual aesthetics and traffic safety . . . [are] not a compelling state interest" in the First Amendment speech context.  Those *amici* also note that generalized, high-level invocations of "zoning" are often used to target minority faith's land use applications.  *See* Br. of Amicus Curiae of the General Conference of Seventh-Day Adventists, *et al.*, at 25–26.  These concerns underscore why it is necessary to hold government entities to their burden to state and support a well-defined government interest.

The City notes that we said in *Grosz v. City of Miami Beach*, 721 F.2d 729 (11th Cir. 1983) that "zoning objectives" were a "significant" government interest. *Id.* at 738–40. *Grosz* is of little persuasive weight here because it was decided under an *ad hoc* balancing framework and not the strict scrutiny, "compelling government" interest framework we apply today. *See id.* at 740. We think that *Grosz* means what it says: "zoning objectives" may be "significant" government interests and may justify government action in a different balancing context. However, the ARFA requires that the government's interest be "compelling," and vague, generalized invocations of government interests in "zoning" and "neighborhood character" are insufficient to carry the government's burden.

Here, the City has failed to carry its burden to demonstrate a compelling government interest. The generalized invocations of neighborhood character and zoning fail as a matter of law under our precedents. The City's invocation of traffic concerns fare slightly better because they are specific to the Eloong Drive property, but they are unsubstantiated in the record. The City's own traffic engineer testified that there would be no traffic safety issues at the Eloong Drive property site from a traffic engineering perspective. That engineer further testified that the increase in the number of vehicles traveling along the streets to the Eloong Drive property would not be substantial if TMAA's application were approved. However, the engineer did testify that the increase in traffic would be large in terms of a percentage change because the roads are so infrequently used presently. The City discusses at length the statements of neighbors living near the Eloong Drive

18                    Opinion of the Court                    22-11674

Property to substantiate its concerns about traffic. But review of these statements reveals that they are the same generalized, sometimes speculative, concerns that we have cautioned are inappropriate. To carry its burden to demonstrate a compelling government interest, the City must present more evidence of its interest, and that evidence must be specific. The City must link its concerns to the particular details, and alleged ills, posed by TMAA's application. Because it failed to do so, it was not entitled to summary judgment in this matter. Further, unlike the RLUIPA and Free Exercise claims there are no disputed facts remaining for this issue. The testimony of the city engineer, and the neighbors at the Planning Commission meeting are in the record and are insufficient to support that the City has a compelling government interest in denying TMAA's application. Accordingly, we reverse the entry of summary judgment on this count and direct the district court to enter judgment for TMAA.

## VI.    Conclusion

Because there are factual disputes relating to the burden that the City has imposed on TMAA, summary judgment was improper on the RLUIPA substantial claim. Accordingly, we **VACATE** the entry of summary judgment on that count. Because the City's planning approval process satisfies rational basis review, summary judgment was proper on the Free Exercise claim. Accordingly, we **AFFIRM** the entry of summary judgment on that count. Because the City is imposing a burden on TMAA's religious freedom, and because it has failed to carry its burden to demonstrate a compelling government interest, TMAA is entitled to judgment on the

22-11674            Opinion of the Court            19

ARFA claim.  Accordingly, we **REVERSE** the entry of summary judgment on the ARFA claim and **REMAND** with instructions to enter judgment for TMAA.

   **VACATED in part, AFFIRMED in part, and REVERSED in part, REMANDED with instructions.**