[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11373

Non-Argument Calendar

_____

ELI PORTER,
MICHAEL SINGLETON,
TIMOTHY VAN BEVERHOUDT,
FRANCOIS WILLIAMS,

Plaintiffs-Appellants,

KEYRON COOPER,

Plaintiff,

*versus*

SGT. DERRELL THIGPEN,
in their individual and official capacities
as Leo's,
CPL. MATT SOWELL,
in their individual and official capacities

as Leo's,

TFC. JONATHAN MALONE,

in their individual and official capacities

as Leo's,

LT. CHRIS LACIENSKI,

in their individual and official capacities

as Leo's,

TCF2 BRENT HAMMOND,

in their individual and official capacities

as Leo's, et al.,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:22-cv-00057-JRH-BKE

————————————————

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

COVID-19 brought difficult challenges to Americans' daily lives. This case arises out of those challenges. Eli Porter and others sued Georgia Governor Brian Kemp, several Georgia State Troopers, and a Bulloch County deputy sheriff for a host of constitutional violations arising from Governor Kemp's executive

orders at the start of the pandemic. The district court dismissed the plaintiffs' complaint and remanded the remaining state-law claims. We affirm.

## I.

In March 2020, Governor Kemp declared a public health emergency in the State of Georgia because of the spread of COVID-19. *See* Ga. Exec. Order No. 03.14.20.01. Per Georgia law, the Governor may "declare that a state of emergency or disaster exists." O.C.G.A. § 38-3-51(a). If the emergency relates to public health, the Governor must convene the General Assembly for its approval or disapproval. *Id.* The Georgia Legislature agreed with Governor Kemp's assessment as to COVID-19, vesting him with several "emergency powers." *Id.* § 38-3-51(c). The Governor had the authority to "enforce all laws, rules, and regulations relating to emergency management," as well as the power "to assume direct operational control of all civil forces and helpers in the state." *Id.* § 38-3-51(c)(1). Finally, the statute empowered Governor Kemp to "exercise such other functions, powers, and duties as may be deemed necessary to promote and secure the safety and protection of the civilian population." *Id.* § 38-3-51(c)(4).

On April 2, the Governor issued a "shelter-in-place" order. *See* Ga. Exec. Order No. 04.02.20.01. The order mandated that Georgians "shelter in place within their homes or places of residence" to protect "the health, safety, and welfare of" the State's residents. *Id.* at 2. While closing restaurants, gyms, and theaters, among other establishments, the order carved out several

exceptions to the shelter-in-place requirement for those engaged in "essential" services. *See id.* at 6–7. Examples included obtaining food or medical supplies, seeking medical treatment, and exercising outdoors. *Id.* at 3.

Though the Governor later expanded the definition of essential services to include "any and all activities that may preserve the health and welfare of persons" in Georgia, the "ability to congregate and worship" was not listed. Ga. Exec. Order No. 04.03.20.02 at 2. Finally, the shelter-in-place order explained that those who violated it "shall be guilty of a misdemeanor." Ga. Exec. Order No. 04.02.20.01 at 9. And "all law enforcement" was "authorized to enforce the Orders." Ga. Exec. Order No. 04.03.20.02 at 2.

Three days after Governor Kemp issued the shelter-in-place order, the Redeeming Church of God the Bible Way "held worship services." Plaintiff Eli Porter, the church's pastor, as well as Plaintiffs Francois Williams, Michael Singleton, and Timothy van Beverhoudt, attended. After an "unnamed" Bulloch County deputy sheriff—Deputy Borne, according to the plaintiffs—alerted the Georgia State Patrol, Sergeant Derrell Thigpen and Corporal Matt Sowell responded. The troopers tried to coax the plaintiffs into "voluntary compliance" with the executive order, even speaking to Porter's attorney over the phone. Thigpen made it clear that if Porter did not comply, he would "mandat[e] compliance." Thigpen and Sowell then left the church.

Other troopers arrived later that day. Lieutenant Chris Lacienski tried to speak to the plaintiffs, "who informed him that they did not wish to speak with him." After several refusals, Lacienski instructed Trooper Aaron DiGiacomo to cite the plaintiffs for reckless conduct under the Governor's executive orders. *See* O.C.G.A. § 16-5-60. The charges were dismissed several months later.

The plaintiffs sued Governor Kemp, the troopers, and Deputy Borne in state court. The defendants then removed the case to federal court. After several dismissals, the plaintiffs filed the operative second amended complaint, asserting various state and federal claims. Governor Kemp and the other defendants moved to dismiss. The district court granted the motions with respect to the federal claims and refused to exercise supplemental jurisdiction over the state-law claims.

On appeal, the plaintiffs challenge several of these holdings. For Governor Kemp and the troopers, the plaintiffs contend that the district court erred by (1) concluding that Eleventh Amendment immunity barred certain claims; (2) dismissing their First Amendment retaliation and due process claims for failure to state a claim; and (3) determining that their free exercise claim was foreclosed by qualified immunity. The plaintiffs raise similar objections on their claims against Deputy Borne.

## II.

We review a district court's grant of a motion to dismiss de novo. *Paez v. Mulvey*, 915 F.3d 1276, 1292 (11th Cir. 2019).

## III.

### A. STATE DEFENDANTS

*Eleventh Amendment & Sovereign Immunity.* The plaintiffs first allege that the district court erred by dismissing their § 1983 claims against the Governor and troopers for three reasons. None is persuasive.

*First*, the plaintiffs contend that the State defendants' removal of the case to federal court waived their Eleventh Amendment immunity. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002). That is incorrect. A state—if it so chooses—may "retain immunity *from liability* for a particular claim even if it waives its immunity *from suit* in federal courts." *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013) (emphasis added). In other words, although the State defendants' removal "to federal court waived [their] immunity-based objection to a federal forum," they "retained [their] immunity from liability for a violation" of § 1983. *Id.* And because a suit for money damages against the Governor and troopers in their official capacities operates as a suit against the State, it is barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

*Second*, the plaintiffs contend that the district court erred by dismissing their claims for declaratory and injunctive relief on sovereign-immunity grounds. But the district court did no such thing. Instead, the court dismissed the plaintiffs' claims because they failed to state a claim for relief "as to all their [substantive]

§ 1983 claims."[1]    The plaintiffs have made no argument that dismissal of those claims on that basis was improper.

*Finally*, the plaintiffs assert that sovereign immunity does not apply to defendants "sued in their individual capacities." Once again, the district court never said that it did. Instead, the court held that sovereign immunity bars the plaintiffs' § 1983 claims "for monetary relief against Defendants in their *official capacity*." The court then dismissed the plaintiffs' claims against the Governor and troopers in their individual capacities for either failure to state a claim or qualified immunity. Again, the plaintiffs make no argument that dismissal on those bases was incorrect.

***First Amendment Retaliation & Due Process.*** Next, the plaintiffs argue that the district court erred when it dismissed their First Amendment retaliation and due process claims. We disagree.

Start with First Amendment retaliation. To allege such a claim, a plaintiff must establish "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). But "probable cause should generally

---

[1] Given that the shelter-in-place order expired on April 13, 2020, these claims are also moot. *See* Ga. Exec. Order No. 04.02.20.01.

defeat a First Amendment retaliatory arrest claim." *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019).

That resolves this claim. The plaintiffs concede that Governor Kemp's April 2 executive order required them to shelter in place save for "essential" activities. Attending indoor religious services was not considered essential. What's more, violation of the executive order was a misdemeanor. *See* Ga. Exec. Order No. 04.02.20.01. The plaintiffs violated the order by conducting and attending worship services on April 5. Because the troopers had probable cause to arrest the plaintiffs, their First Amendment retaliation claims fail. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

The plaintiffs' substantive and procedural due process claims fare no better. The plaintiffs argue that Governor Kemp and the troopers violated their substantive due process rights "by attempting to criminalize and enforce an unconstitutional mandate that Plaintiffs remain in their homes." But when "a specific constitutional provision covers a plaintiff's claim, the requirements of that provision are not to be supplemented through the device of 'substantive due process.'" *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quotation omitted); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). The plaintiffs' claims that they were deprived of the right to leave their homes, to engage in "religious practices and worship," and "to socialize in the presence of others" fall under the purview of the Free Exercise Clause, so the district court properly dismissed their substantive due process claim.

The plaintiffs next allege that the Governor violated their procedural due process rights by issuing the shelter-in-place order "without any notice or process" and with "no opportunity to be heard." The troopers, according to the plaintiffs, are liable for "enforcing Defendant Kemp's unconstitutional orders." The district court dismissed this count for failure to state a claim.

We agree. Procedural due process is necessarily "flexible," and "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). And "summary administrative action may be justified in emergency situations." *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300 (1981) (collecting cases). What's more, "[p]rotection of the health and safety of the public is a paramount governmental interest" that can justify "summary administrative action." *Id.*

The plaintiffs do not contest that the Governor issued—and the troopers enforced—the executive orders to "address [the COVID-19] emergency, control the spread of COVID-19, and aid recovery efforts." Issued at the beginning of a large-scale public health emergency to counter the spread of a deadly disease, the executive orders did not violate the plaintiffs' procedural due process rights.

*Free Exercise.* Finally, the plaintiffs argue that the Governor and troopers violated their free exercise rights by issuing and enforcing the executive orders. They contend that the district court erred in granting the Governor and troopers qualified immunity on this claim. We disagree because it was not clearly

established that Governor Kemp's executive orders—and the troopers' enforcement of those orders—violated the Free Exercise Clause.

For qualified immunity to apply, public officials must be acting within their discretionary authority. *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019). If so, the burden shifts to the plaintiffs. To meet this burden, the plaintiffs must show that (1) they "suffered a violation of a constitutional right," and (2) the right "was 'clearly established' at the time of the alleged misconduct." *Id.* Courts may address these prongs in either order. *T.R. v. Lamar Cnty. Bd. of Educ.*, 25 F.4th 877, 883 (11th Cir. 2022).

We begin with discretionary authority. The Georgia Legislature empowered Governor Kemp to declare a public health emergency and to take all steps "necessary to promote and secure the safety and protection of the civilian population." O.C.G.A. § 38-3-51(c)(4). Governor Kemp exercised these powers through several executive orders. So too did he authorize the troopers to "enforce" the relevant executive orders. *See* Ga. Exec. Order No. 04.03.20.02 at 2. Issuing and enforcing the executive orders thus fell well within the "arsenal of powers" enjoyed by the Governor and the troopers. *Carruth v. Bentley*, 942 F.3d 1047, 1055 (11th Cir. 2019) (quotation omitted).

At the second step, we need not consider whether there was a constitutional violation because the law was not clearly established. Governments may impose neutral laws of general applicability that incidentally burden religious practice. *Thai*

*Meditation Ass'n of Ala., Inc. v. City of Mobile*, 83 F.4th 922, 928 (11th Cir. 2023). The plaintiffs assert that the Governor's executive orders were "not neutral, not generally applicable" because they carved out certain secular activities as essential without providing a corresponding exemption for religious activities. We need not reach the merits of this argument. Even if the executive orders violated the plaintiffs' free exercise rights, qualified immunity shields the Governor and troopers from liability.

As of April 5, 2020, the plaintiffs could not show that failing to provide a comparable exemption for religious activity violated the Free Exercise Clause. Indeed, each of the cases cited by the plaintiffs to support their claims were decided *after* the April 2 executive order giving rise to the events of this case. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) (per curiam); *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021); *Tandon v. Newsom*, 593 U.S. 61 (2021) (per curiam). Our sister circuits have held that executive orders at the start of the pandemic did not violate the First Amendment. *See, e.g.*, *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 300 (6th Cir. 2023); *Elim Romanian Pentecostal Church v. Pritzker*, 22 F.4th 701, 703 (7th Cir. 2022) (noting that it was "impossible to describe as 'clearly established' *in the spring of 2020* a rule that a capacity limit on religious services during a pandemic violates the Constitution" (emphasis added)). The Governor is entitled qualified immunity on this claim.

So are the troopers. As of the time the troopers acted, no authority clearly established that Governor Kemp's executive

orders were unconstitutional.  And "[p]olice are charged to enforce laws until and unless they are declared unconstitutional." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).  The officers are also entitled to qualified immunity on this claim.

### B. DEPUTY BORNE

We next address Deputy Borne.  Our conclusion remains the same, but for different reasons.  We dismiss Borne from this dispute because the plaintiffs abandoned their appeal against him. *See United States v. Campbell*, 26 F.4th 860, 872–74 (11th Cir. 2022) (en banc).  Borne is not listed as an appellee in the caption of their appeal.  Nor is he included in the certificate of interested persons, and his counsel is not listed on the certificate of service.  Indeed, Borne goes unmentioned in the plaintiffs' briefing save for one page in the "course of proceedings" section.  Finally, the plaintiffs did not include Borne on their motion for leave to file a civil appeal out of time or in their civil appeal statement.  Borne is thus no longer a party in this appeal.

★    ★    ★

Seeing no errors in the district court's decision, we **AFFIRM**.